

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-24-00357-CV

---

Michael Helling, Jackson Helling, and Courtney Trujillo, Appellants

v.

Tanya Kerr and TDK Acquisitions, LLC d/b/a T. Kerr Property Group, Appellees

---

On Appeal from the 395th Judicial District Court
Williamson County, Texas
Trial Court No. 24-0729-C395

---

## MEMORANDUM OPINION[1]

In this interlocutory appeal, Appellants challenge the denial by operation of law of their

Texas Citizens Protection Act (TCPA) motions to dismiss. The underlying case involves claims by

Appellees of public disclosure of private facts, defamation per se, intentional infliction of

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex Gov't Code Ann. § 73.001. We follow the precedent of the Third Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

emotional distress, and a request for injunctive relief, all stemming from a series of social media postings about Appellee Tanya Kerr's intimate personal life. Concluding that these postings do not constitute communications made in connection with a matter of public concern, we affirm the denial of the Appellants' TCPA motions to dismiss.

## I. BACKGROUND

Tanya Kerr is a real estate agent in Round Rock and Georgetown, Texas, and managing member of TDK Acquisitions, LLC d/b/a T. Kerr Property Group, which is part of the larger Keller Williams real estate group. Kerr uses social media to advertise her business.

While working with a different real estate group in the past, Kerr admits she was involved in an intimate relationship with her former employer while both of them were married to other people. According to Appellants, it is "rumored that" Kerr had a similar relationship with a different former employer. Kerr denies this rumor. After Kerr sent an apology letter to the ex-wife of the former employer with whom she admits having had an intimate relationship, Appellant Michael Helling posted a series of comments on Kerr's social media accounts and other social media websites on which she advertises, including:

Hi Tanya Why are you f@@cking married men?

Hi Tanya Kerr why are you f@@cking married men while your business is with local men and their wives?

Hi Tanya Kerr, Why are sleeping with your married boss? Why are you a homewrecker?

Tanya Kerr is sleeping with her bosses who are married? Why is he sleeping with married men????

Hi, Tanya Kerr what married man are you sleeping with now????

Is this the same woman who sleeps with married men?

Is this after you slept with your married boss???!!

How does this work when you screw your married boss?

2

So you sleep with your married boss and then try and sue him and then get back with your husband you cheated on.?!?!

Are you a whore if you sleep@with your married boss???

Can we have an episode about you sleeping with your married boss??????? [referring to a video]

So cute [referring to a picture of Kerr's young daughter]. Does she know her mom sleeps with married men?

In addition to reposting some of these comments, Appellant Courtney Trujillo posted the following comment accompanied by a screen grab of two of the above posts: "I am not sure if anyone has used this lady [Kerr] as their realtor here in Round Rock, but I think it's important to support all women and stand against homewreckers. Who is with me?" Trujillo posted this comment anonymously on a Facebook group called People of Round Rock. Trujillo is the sister of the ex-wife of the employer with whom Kerr admits having had an intimate relationship.

Kerr alleges that after she became aware of the posts, her husband sent a text to the ex-wife of her former employer. According to Kerr, shortly afterwards, her husband received a text from Appellant Jackson Helling, Michael Helling's son, stating "I'm the one posting[.]" Jackson Helling denies sending such a text and denies posting about Kerr.

Appellees sued Appellants for public disclosure of private facts, defamation per se, intentional infliction of emotional distress, and injunctive relief. The trial court granted a temporary restraining order against Appellants, which expired. After filing original and amended answers asserting various defenses, Appellants filed motions to dismiss under the TCPA. The Hellings argued that "the TCPA applies to [Appellees'] claims against them as [the claims] target protected speech and the right to association," that Appellees "cannot establish clear and convincing evidence on each element of their causes of action," and that Appellees' claims "are defeated as a matter of law based on asserted affirmative defense or other grounds." Trujillo similarly argued that "this lawsuit [is] directed at stopping [her] right to free speech" and that she

has "affirmative defenses or other reasons that each of [Appellees'] causes of action will fail as a matter of law."

After the trial court held a hearing on the TCPA motions, Appellants twice reminded the court of the 30-day statutory deadline for a ruling. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(a) (requiring a ruling within 30 days). Because the trial court did not timely act, the motions were overruled as a matter of law, giving Appellants the right to file this interlocutory appeal. *Id*. § 27.008(a).

## II. ISSUES ON APPEAL

On appeal, Appellants complain that they are entitled to an order granting their TCPA motions to dismiss. They argue: (1) that Appellees' claims in the underlying suit "were based on, and were brought to challenge, the exercise of the right to engage in protected free speech and association on a matter of public concern"; (2) that Appellees failed to meet their prima facie burden; and (3) that Appellants established affirmative defenses. Because Appellants' first issue is dispositive, we address only that issue.

## III. DISCUSSION

### A. Applicable law

The TCPA "protects speech on matters of public concern by authorizing courts to conduct an early and expedited review of the legal merit of claims that seek to stifle speech through the imposition of civil liability and damages." *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023). It "was designed to protect both a defendant's rights of speech, petition, and association and a claimant's right to pursue valid legal claims for injuries the defendant caused." *Montelongo v. Abrea*, 622 S.W.3d 290, 295 (Tex. 2021) (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.002). As relevant here, before a claim may be dismissed under the TCPA, the defendant must

4

show "that it is based on or is in response to the defendant's exercise of the right of free speech." *Dickson*, 662 S.W.3d at 363 (internal quotation marks omitted). While the TCPA is liberally construed to effect its purpose, it "does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions." Tex. Civ. Prac. & Rem. Code Ann. § 27.011.

The TCPA provides a three-step process for dismissing a legal action to which it applies. *Montelongo*, 622 S.W.3d at 296. Initially, the party seeking dismissal must demonstrate that the TCPA applies, i.e., "that the non-movant's legal action 'is based on or is in response to [the] party's exercise of the right of free speech; right to petition; or right of association.'" *O'Rourke v. Warren*, 673 S.W.3d 671, 680 (Tex. App.—Austin 2023, pet. denied) (quoting Tex. Civ. Prac. & Rem. Code Ann. §§ 27.003(a), .005(b)). If the movant does not meet this burden, the motion fails. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b). If the movant meets this burden, the nonmovant next must establish by "clear and specific evidence a prima facie case for each essential element" of her claims. *Id.* § 27.005(c). Finally, if the nonmovant does so, the burden shifts back to the movant to establish "an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." *Id.* § 27.005(d).

## B. Standard of review

We review a trial court's ruling on a TCPA motion de novo. *O'Rourke*, 673 S.W.3d at 679. In determining whether dismissal under the TCPA is proper, courts consider "the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a). We consider the pleadings in the light most favorable to the nonmovant and do not "blindly accept[ ] a movant's attempts to characterize a nonmovant's claims

5

as implicating protected expression"; instead, we "favor[ ] the conclusion that the claims are *not* predicated on protected expression." *Venero Lugo v. Cordova Sanchez*, No. 03-21-00058-CV, 2021 WL 5312323, at \*4 (Tex. App.—Austin Nov. 12, 2021, pet. denied) (mem. op.) (emphasis added). Whether the TCPA applies to a claim is an issue of statutory interpretation we also review de novo. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018).

### C. Analysis

The purpose of the TCPA is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002. Under the TCPA, the "[e]xercise of the right of free speech" is defined as "a communication made in connection with a matter of public concern." *Id*. § 27.001(3).

Appellees argue that the social media postings at issue are not protected under the TCPA because they involve private matters rather than matters of public concern, citing *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 135 (Tex. 2019) (holding that "purely private matters" are not matters of public concern under the TCPA) and *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 474 (Tex. 1995) ("[T]here is a presumption . . . that the public has no legitimate interest in private embarrassing facts[.]"). Appellees further point to *Terrell v. Mazaheri*, 676 S.W.3d 116 (Tex. App.—San Antonio 2023, no pet.) as involving similar facts.

*Terrell* involved an attorney whose client sought a divorce. 676 S.W.3d at 122. In a social media post, the client's wife accused the attorney of "fooling around with [her] husband." *Id.* When the attorney sued the wife for defamation, the wife moved to dismiss the suit under the TCPA. *Id*. The trial court denied the motion. *Id*. Affirming, the Fourth Court of Appeals held that the

statement "fool around with my husband" is not a matter of public concern, and thus the TCPA did not apply. *Id*. at 126.

Appellants argue neither that *Terrell* was wrongly decided, nor that it involved communication of a different kind of content than involved here. Rather, Appellants argue that *Terrell* involved "a context far different from, and entirely unrelated to, the present one, in which Kerr herself [2] elevated the importance of information about her character[.]" In doing so, Appellants contend, Kerr made her intimate relationships a matter of public concern. In developing this theory, Appellants point to Kerr's pleadings, her online advertising, and her membership in the National Association of Realtors (NAR). We address each of these matters in turn.

### (1) Kerr's pleadings

Appellants contend that "Kerr's own pleadings confirm why the communications at issue . . . raised a matter of public concern," citing allegations by Kerr that her business depends on her reputation and that she uses social media to advertise. From Kerr's pleadings:

> Ms. Kerr's business and livelihood, as well as the success of T. Kerr Property Group, relies on obtaining new clients based on her reputation in the community.

> [Kerr] use[s] social media platforms to promote [her] business, market [her] clients' listings/homes, and find new clients.

From these allegations, Appellants conclude that "the public deserves access to information—favorable or negative—when assessing [Kerr's] reputation"; that is, "[a]s important as it may be for Kerr to use social media to exploit her *favorable* reputation in the community, the

---

[2] Appellants focus their briefing on Kerr's claims, contending in a footnote that because "at no time has any basis been set forth by which TDK Acquisition could maintain any of the causes of action asserted," we should thus "start [our] analysis with the recognition that TDK Acquisitions has no claim in this lawsuit, and at a minimum should have its claims dismissed pursuant to . . . . Tex. Civ. Prac. & Rem Code § 27.005(b)." However, as explained above, the TCPA provides a three-step process for dismissal, the first of which requires the defendant to demonstrate that the case is based on or in response to the defendant's exercise of the right of speech, petition, or association. *Montelongo v. Abrea*, 622 S.W.3d 290, 296 (Tex. 2021). We deny Appellants' request that we allow them to skip this step with respect to TDK Acquisitions, LLC.

7

flip-side of the coin is that the same social media could present additional information relating to her *negative* reputation in the community" (emphasis in original). Crucially, though, Appellants do not explain why the public deserves access to *private* information about Kerr, such as information about her past intimate relationships.

Further, Kerr's allegation that her business depends on her reputation—including her personal reputation—did not open the door. To the contrary, this statement merely reflects the posture of all defamation plaintiffs who claim damage to their business resulting from a personal comment, including Kerr's counterpart in *Terrell*, who sued for damage to "her good name and professional reputation" based on the personal comment that she had "fooled around" with a client. *See* 676 S.W.3d at 124, 126. Put differently, the mere fact that a personal comment may have the capacity to inflict damage on a person's business does not thereby render it "a matter of public concern" under the TCPA. *See id*. (holding that personal comment alleged to have damaged attorney's "good name and professional reputation"—i.e., that attorney "fooled around" with a client—did not involve matter of public concern); *Ashley v. Kenny*, No. 01-22-00823-CV, 2024 WL 3571364, at *2, *6 (Tex. App.—Houston [1st Dist.] July 30, 2024, no pet.) (mem. op.) (holding that personal comment made subject of business disparagement claim—i.e., that married doctor "had sexual relationships with multiple nurses"—was not shown to involve matter of public concern). "The phrase 'matter of public concern' commonly refers to matters 'of political, social, or other concern to the community,' as opposed to purely private matters." *Creative Oil*, 591 S.W.3d at 135 (citing *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017)); *see also Venero Lugo*, 2021 WL 5312323, at *4 ("We [do] not blindly accept[] a movant's attempts to characterize a nonmovant's claims as implicating protected expression but favor[] the conclusion that the claims are not predicated on protected expression.").

8

We conclude Appellants have not shown Kerr's pleadings demonstrate that the social media postings at issue raised a matter of public concern.

**(2) Kerr's online advertising**

Appellants contend that Kerr's online advertising "express[es] her view about the importance of her trustworthiness." As an example, Appellants refer to her statements that "choosing the right Realtor is crucial," and "[w]hen seeking a trustworthy real estate agent, observe their behavior rather than just their words." According to Appellants, "in framing what 'behavior' rather than 'words' to evaluate, Kerr's website sets forth what she holds out to be her 'beliefs,'" namely:

## Our Beliefs

We share the Keller Williams Realty belief system called the WI4C2TES. This system guides how we treat each other and how we do business.

**Win-Win:** Or no deal
**Integrity:** Do the right thing
**Customers:** Always come first
**Commitment:** In all things
**Communication:** Seek to understand

**Creativity:** Ideas before results
**Teamwork:** Together everyone achieves more
**Trust:** Starts with honesty
**Equity:** Opportunities for all
**Success:** Results through people

Our priorities are Wellness, Family, & THEN Business — in that order.

As with Kerr's pleadings, we do not see how the Keller Williams belief system renders *private* information about Kerr, including information about her past intimate relationships, a matter of public concern. Nor do Appellants explain why they contend any part of this belief system has such an effect.

We conclude Appellants have not shown Kerr's online advertising demonstrates that the social media postings at issue raised a matter of public concern.

**(3) Kerr's NAR membership**

Appellants contend that as a member of NAR, Kerr is subject to its Code of Ethics and Standards (the Code), which states that "[t]he term REALTOR® has come to connote competency,

fairness, and high integrity resulting from adherence to a lofty ideal of moral conduct in business relations," and that Realtors strive "to eliminate practices which may damage the public or which might discredit or bring dishonor to the real estate profession." But again, Appellants do not explain how NAR's business standards render *private* information about Kerr, including information about her past intimate relationships, a matter of public concern.[3]

Appellants further cite the Code as stating that "[i]n the interpretation of [the obligations imposed by the Code], Realtors® can take no safer guide than that which has been handed down through the centuries, embodied in the Golden Rule 'Whatsoever ye would that other should do to you, do ye even so to them,'" and that "[a]ccepting this standard as their own, REALTORS® pledge to observe its spirit in all of their activities whether conducted personally. . . [and are] obligat[ed] to treat all parties honestly."

From this, Appellants conclude: "In this way, Kerr made her personal conduct a matter of public concern." That is, Appellants construe "activities whether conducted personally" to mean "personal conduct." However, the full sentence from the source material reads as follows: "Accepting this standard as their own, REALTORS® pledge to observe its spirit in all of their activities whether conducted personally, through associates or others, or via technological means, and to conduct their business in accordance with the tenets set forth below." In this sentence, "conducted personally" refers to conduct performed directly by an individual as opposed to conduct performed indirectly through others or through technological means, and not to "personal

---

[3] Moreover, such an argument would contradict Appellants' position that Kerr is situated differently from realtors generally. From Appellants' reply brief:

> Appellants concede that it would be a different question had their posts challenged the trustworthiness of a competing realtor who had not asked the world to evaluate his or her trustworthiness. That is because the other realtor would not have held out as a matter of public concern their trustworthiness.

conduct."[4] We are unpersuaded that by joining NAR, realtors in general or Kerr in particular forfeit the right to take any legal action against the type of social media postings at issue in this case.

We conclude Appellants have not shown Kerr's membership in NAR demonstrates that the social media postings at issue raised a matter of public concern.

Appellants' first issue is overruled.

## IV. CONCLUSION

For the reasons stated above, we affirm the trial court's denial of Appellants' TCPA motions to dismiss.

LISA J. SOTO, Justice

December 22, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

---

[4] Again, even if Appellants' reading were not plainly incorrect, the argument that the Code's provisions place all realtors in the same position as Kerr contradicts Appellants' position that the "centerpiece premise" of this case is that Kerr "*self-elevates* the importance of her online reputation." (emphasis added). *See also* n.3 above.